Mr. Brian D. Lambert Attorney for the Housing Authority of the City of Ocala 121 Northwest Third Street Ocala, Florida 32670
Dear Mr. Lambert:
You have asked on behalf of the Housing Authority of the City of Ocala, substantially, the following questions:
1. May the housing authority enter into an agreement with the City of Ocala for the city to provide traffic control within authority housing developments without reimbursement to the city? 2. May on-duty police officers of the City of Ocala be pre-authorized to act as authority agents for the purpose of ordering persons who are trespassing on authority property to leave?
In sum:
1. To the extent roads within authority developments are open to the public for travel by motor vehicle, the municipality may provide traffic control on such roads. If the public has no general right to travel on the roads or has limited access, the housing authority and the City of Ocala may enter into an agreement whereby the city provides traffic control services to the authority with reimbursement to the city for the actual costs for such services. 2. To the extent the pre-authorization of municipal police officers to act as agents of the housing authority for the purpose of ordering trespassers to leave authority property is determined by the governing board of the City of Ocala to serve a municipal purpose, it may be done.
You state that the Housing Authority of the City of Ocala (authority) is a public corporation created pursuant to Ch. 421, F.S.[1] The Legislature has stated the purpose for creation of housing authorities as follows:
(1) There exist in the state insanitary or unsafe dwelling accommodations and that persons of low income are forced to reside in such insanitary or unsafe accommodations; that within the state there is a shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford and that such persons are forced to occupy overcrowded and congested dwelling accommodations; that the aforesaid conditions cause an increase in and spread of disease and crime and constitute a menace to the health, safety, morals and welfare of the residents of the state and impair economic values; that these conditions necessitate excessive and disproportionate expenditures of public funds for crime prevention and punishment, public health, welfare and safety, fire and accident protection, and other public services and facilities.
* * *
(3) The clearance, replanning and reconstruction of the areas in which insanitary or unsafe housing conditions exist and the providing of safe and sanitary dwelling accommodations for persons of low income, including the acquisition by a housing authority of property to be used for or in connection with housing projects or appurtenant thereto, are exclusively public uses and purposes for which public money may be spent and private property acquired and are governmental functions of public concern. (4) The necessity in the public interest for the provisions hereinafter enacted, is hereby declared as a matter of legislative determination.[2]
Thus, the Legislature has made it clear that housing authorities created pursuant to Ch. 421, F.S., serve a public purpose by promoting, in part, crime prevention and public health, welfare and safety, as well as providing safe and sanitary living accommodations for low income persons.
Question One
In several opinions, this office has stated that the provisions in Ch. 316, F.S., are enforceable on private property only when the public has a right to travel by motor vehicle on such property. This conclusion is based upon s. 316.640, F.S., which provides, in pertinent part, that municipalities shall enforce state traffic laws on all municipal streets and highways "wherever the public has the right to travel by motor vehicle."[3] However, no authority to enforce Ch. 316, F.S., exists on private roads located within a private development or over roads or streets within a special taxing district where such byways are not available for public use, absent a written agreement entered into pursuant to s. 316.006(2)(b), F.S.[4]
Section 316.006(2), F.S., in pertinent part, provides:
(b) A municipality may exercise jurisdiction over any private road or roads, or over any limited access road or roads owned or controlled by a special district, located within its boundaries if the municipality and party or parties owning or controlling such road or roads provide, by written agreement approved by the governing body of the municipality, for municipal traffic control jurisdiction over the road or roads encompassed by such agreement. Pursuant thereto: 1. Provision for reimbursement for actual costs of traffic control and enforcement and for liability insurance and indemnification by the party or parties, and such other terms as are mutually agreeable, may be included in such an agreement. 2. The exercise of jurisdiction provided for herein shall be in addition to jurisdictional authority presently exercised by municipalities under law, and nothing in this paragraph shall be construed to limit or remove any such jurisdictional authority.
In AGO 88-5, this office concluded that municipal law enforcement officers possess statutory authority to enforce appropriate provisions of Ch. 316, F.S., on private roads or limited access roads owned or controlled by a special district when such roads are within the municipal boundaries and a written agreement pursuant to s. 316.006(2)(b), F.S., has been entered into by the parties. It was determined, however, that such an agreement must provide for reimbursement for the actual costs of traffic control and enforcement and for liability insurance and indemnification by the party or parties who own or control such road or roads.[5]
You state that the public has limited access to the roads within the authority's development, but there are no restrictive covenants which preclude the public from entering the development and using the roads. Furthermore, there is no guard or gate which limits public access to the development. The determination of the nature and use of the roads within the housing authority development or whether the roads are open to the public is a mixed question of law and fact which this office cannot resolve.
Accordingly, to the extent the roads within the housing authority development are open to the public, the municipality may provide traffic control thereon. If the roads are not open to the public or have limited access, an agreement between the authority and the city pursuant to s. 316.006(2)(b), F.S., could authorize the municipal police department to enforce traffic laws on such roads. Such an agreement, however, must include provisions for the reimbursement of the municipal police department for the actual costs of traffic control.
Question Two
Section 810.09(1), F.S., states "[w]hoever, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance as to which notice against entering or remaining is given, . . .commits the offense of trespass on property other than a structure or conveyance." Furthermore, s. 810.09(2)(b), F.S., provides:
If the offender defies an order to leave, personally communicated to him by the owner of the premises or by an authorized person . . . he is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.[6]
The Supreme Court of Florida, interpreting the term "authorized person" for purposes of s. 810.09, F.S., has stated:
"Common understanding" dictates that the phrase "other authorized person" is to be read in light of the preceding phrase "owner of the premises" . . . . In regard to private land, an "authorized person" is one who receives either express or implied authorization from the owner.[7]
In AGO 90-8, this office addressed whether on-duty police officers could be pre-authorized to act as the agents of a private landowner for the purpose of communicating to an alleged trespasser an order to leave the private property pursuant to s.810.09(2)(b), F.S. This office found no statutory provision which specifically authorized local law enforcement officers to be designated as agents of private persons. Moreover, it was concluded that the predesignation of on-duty law enforcement officers to act as agents of private landowners to communicate an order to leave the private property would serve primarily a private purpose in violation of s. 10, Art. VII, State Const.[8]
I would note that AGO 90-8 recognized that there may be instances where, in light of an immediate threat to the public safety and welfare, it is in the public's interest to permit a law enforcement officer to order, on behalf of a private landowner, an alleged trespasser to leave the property. Such situations, however, would depend upon the particular facts and must be determined on a case by case basis.
Public funds may properly be spent only for a public purpose or function which is expressly authorized by law or which must be necessarily implied to carry out the purpose or function expressly authorized.[9] Thus, municipal funds may be used only for a municipal purpose and only when properly budgeted for such a use. The determination, however, of the presence of a proper municipal purpose is ultimately a factual one to be made by the governing board of the municipality.[10]
Unlike the factual situation in AGO 90-8, the housing authority is a public entity which legislatively has been declared to serve a public purpose by its existence and operation.[11] Whether the predesignation of municipal police officers to order persons to leave the housing authority's property would serve primarily a municipal purpose in helping to provide safe dwellings for low income persons will have to be determined by the municipality.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, s. 421.04(1), in pertinent part, providing:
In each city, as herein defined, there is hereby created a public body corporate and politic to be known as the "Housing Authority" of the city; provided, however, that such authority shall not transact any business or exercise its powers hereunder until or unless the governing body of the city by proper resolution shall declare that there is need for an authority to function in such city.
[2] Section 421.02, F.S.
[3] See, AGO's 88-5, 86-59 and 83-84.
[4] See, s. 316.640(3)(a), F.S., providing:
The police department of each chartered municipality shall enforce the traffic laws of this state on all the streets and highways thereof and elsewhere throughout the municipality wherever the public has the right to travel by motor vehicle. In addition, the police department may be required by a municipality to enforce the traffic laws of this state on any private or limited access road or roads over which the municipality has jurisdiction pursuant to a written agreement entered into under s. 316.006(2)(b). . . .
[5] See also, AGO 90-62.
[6] Section 775.084, F.S., was amended by s. 6, Ch. 88-131, Laws of Florida, to delete all references to misdemeanors.
[7] State v. Dye, 346 So.2d 538, 541-542 (Fla. 1977).
[8] Section 10, Art. VII, State Const., prohibits the use of public funds for a private purpose, by precluding the state, a county or municipality or agency thereof from using its taxing power or credit to aid any private interest or individual.
[9] See, s. 10, Art. VII, State Const.; AGO's 83-6 and 72-198.
[10] Cf., AGO 77-27, which concluded that some degree of control over public funds or property should be retained by the public authority to assure accomplishment of the public purpose.
[11] See, s. 421.02, F.S.